## SIMKIN v. FERRO CONCRETE CONSTRUCTION CO. AND EUGENE POWELL, IN SOLIDO

(January 16, 1928. Opinion and Decree.)
(February 13, 1928. Rehearing Refused.)
(March 14, 1928. Writ of Certiorari and Review Denied by Supreme Court.)

*(Syllabus by the Court)*

1. **Louisiana Digest — Damages — Par. 41, 59.**

A judgment dismissing a husband's claim for damages for the loss of affection and companionship of his wife and for mental suffering at her death will be dismissed where the evidence shows that he had been living apart from her almost all the time since the marriage, had contributed nothing to her support and had neglected her continuously.

Appeal from Civil District Court, Division "A". Hon. Hugh C. Cage, Judge.

Action by Louis Simkin against Ferro Concrete Construction Co. and Eugene Powell, in solido.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Leon Levitan, of New Orleans, attorney for plaintiff, appellant.

Chas. Rosen and P. E. Edrington, Jr., of New Orleans, attorneys for Samuel Fein, Tutor for Minor Irving Simkin.

Edward Rightor and Eugene Powell, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J., dissents.

JONES, J. This is a suit by Louis Simkin for damages against the Ferro Concrete Construction Company and one of its colored employees, Eugene Powell, in solido, in the sum of twenty-five thousand and sixty-four dollars and fifty cents ($25,064.50) for the death of his wife, Mrs. Fannie Fein Simkin, who was killed at about 1:50 P. M. on Tuesday, April 13th, 1926, when she was struck by an iron pinch bar, which fell from the sixteenth floor of the Pere Marquette Building, then under construction by the Ferro Concrete Construction Company.

At the time of Mrs. Simkin's death she was separated but not by judgment from her husband, the plaintiff herein. The sole issue of the marriage between the plaintiff and the deceased was a little boy, Irving Simkin, who was about four years old at the time of his mother's death. On the date set for trial of Mr. Simkin's case, Samuel Fein, the maternal grandfather, who had been appointed tutor of the minor (after a prolonged bitter contest with plaintiff herein) by Judge Parker of Division "D" of the Civil District Court, intervened in the suit and claimed fifty thousand dollars ($50,000.00) damages for the use of the child.

Having found defendants guilty of negligence, the learned trial judge gave judgment in favor of the tutor for the use and benefit of the little boy, Irving Simkin,

in the sum of six thousand dollars ($6000.00) and in favor of the plaintiff, Louis Simkin, for the sum of sixty-four dollars and fifty cents ($64.50) to cover the funeral charges which he had paid, but rejected plaintiff's claim for damages for the death of his wife. From this judgment the present appeal was prosecuted by Simkin, but defendant did not appeal from the judgment in favor of the child, nor did the tutor appeal from said judgment. The defendant company has paid to the tutor of the child the amount awarded it under said judgment and has not answered this appeal.

The sole issue before us is the correctness of the judgment below in refusing damages to a husband, who had been separated from his wife for more than a year at the time of her death, for loss of her companionship and affection. As the wife died in a few minutes after the accident without regaining consciousness, plaintiff can recover nothing for her suffering.

The evidence shows as follows: Plaintiff was married to deceased on May 30th, 1921, and they lived together at various times for short periods, mostly at her father's; they parted in January, 1925, and never lived together again; the wife, who continued to live with her father at his residence, supported the child unaided by the husband, on her meagre earnings first as a soda water dispenser at ten ($10.00) dollars per week and then as a student, telephone operator at a weekly wage of twelve and 50-100 ($12.50) dollars; he was ordered repeatedly by the Juvenile Court to pay alimony in the sum of five ($5.00) dollars per week for non-support of his wife and child, but had frequently failed to do so and was delinquent in a large amount when the judge of the local Juvenile Court on April 24th, 1925, suspended his order of alimony pay-

ment, because plaintiff, who had enlisted in the army in 1921 and had been injured, was, in January, 1924, allowed one hundred ($100.00) dollars per month for vocational training and his wife and child thereby became entitled to forty-five ($45.00) dollars per month upon proof of marriage and birth of child; deceased drew this forty-five ($45.00) dollars as long as her husband was allowed his stipend for vocational training and when he was put on the basis of a partially disabled soldier and allowed thirty ($30.00) dollars per month permanently, some months before her death, the child was then given six ($6.00) dollars of this amount every month and will continue to draw this amount as long as plaintiff's status of a disabled soldier continues.

Plaintiff testifies that he could not help crying (in fact nobody could) when he saw the mutilated body of his wife at the hospital a few minutes after the accident, that he paid the funeral bill and arranged other details; that his father-in-law had poisoned the mind of his wife against him and that his marital troubles were largely if not entirely due to his ill-will and enmity; the father-in-law testifies that plaintiff was "no good", that he had caused his daughter continuous humiliation and sorrow and had in the end practically killed her by his cruelty.

The Supreme Court in 164 La. Pamphlet 113, No. 10, page 825, Succession of Simkin, found that plaintiff was unworthy of the tutorship of his minor child and affirmed the decision of Judge Parker appointing the grandfather to that position.

We concur in the conclusion of the trial judge, who concludes his able opinion as follows:

"The evidence convinces me that his relations with her were such that her mere

death created in him neither grief nor anguish, that he has lost no companionship, no support, no assistance, and he comes not, in my opinion, within the purview of the law.

"He paid $64.50 towards the funeral. He sues for this amount. He will be denied any judgment for any loss or damage occasioned by the death of his wife, as the court's opinion is that he suffered none, but judgment will be given in his favor for $64.50 which he contributed to the funeral expenses."

Counsel for appellant relies on decisions of the Supreme Court holding the provisions of the law that the surviving spouse in necessitous circumstances is entitled to a fixed alimony of one thousand dollars ($1000.00), in preference to others, must be construed as written, but those decisions are not applicable here.

Article 2315 of the Civil Code reads differently. Under that article the burden was on the plaintiff to prove damages and this burden he has not borne.

Article 110, Rev. Civil Code, states that a husband owes to his wife fidelity, support and assistance, and this article should be considered along with Article 2315 when a husband claims damage for the grief and anguish caused by the death of his wife and for his loss of her affection and companionship.

Plaintiff relies on the decision of the Supreme Court in Andrus et als. vs. La. Western Railroad Co., 142 La. 318, 76 So. 727, where the sum of fifteen hundred ($1500.00) dollars was allowed surviving widow for the death of her husband, with whom she had lived only about three and one-half months and from whom she had received no support whatsoever.

In that case the court found that the deceased husband had been conscious for a little while and had suffered both mentally and physically, as he realized that he had been mortally injured. This amount of fifteen hundred ($1500.00) dollars may have been allowed the wife in satisfaction for her inherited claim of damage for his suffering. Moreover, the court emphasizes the fact that under our Civil Code the husband and father is civilly liable for the maintenance of his family and the wife testified that she was not at fault for the separation, still loved him and hoped for a reconciliation, as she did not know why he had left her.

Here the evidence shows a different state of facts and we do not think the decision controlling.

For above reasons the judgment is affirmed.

---

## DISSENTING OPINION

WESTERFIELD, J. An interruption of the marital relation is not always nor necessarily permanent. The negligent killing of the wife is a final destruction of the status, which may never be resumed. An estranged husband may suffer less injury to his feelings by the killing of his wife than would one more felicitously situated, but that he is damaged, to an appreciable extent, by the obliteration of all hope of reunion, and of the final attainment of that measureless benediction, connubial bliss, is, it appears to me, beyond controversy. "As long as the lamp holds out to burn, the humblest sinner may return."

I respectfully dissent.